IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRELL CROSS, | No. C 07-3941 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |
| v. | |
| D. K. SISTO, Warden, | |
| Respondent. | |

**INTRODUCTION**

Petitioner, a California prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus challenging his conviction pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based upon petitioner's claims. Respondent has filed an answer and a memorandum of points and authorities in support of it, and petitioner filed a traverse. For the reasons set forth below, the petition is **DENIED**.

**STATEMENT**

Petitioner was charged in Alameda County Superior Court of murder, possession of a firearm by a felon, and two counts of assault with a deadly weapon. *See* Cal. Pen. Code §§ 187, 12021(a), 245(a)(2). The assault charges were not included in the original preliminary hearing, but were later added by information. *See* Cal Pen. Code § 739. The charges stemmed from an

incident in which petitioner shot and killed John McClendon.

The basic facts of the incident are not in dispute. At around 10:45 p.m. on December 24, 1999, petitioner met McClendon and several other men on a street corner in Oakland, California. McLendon and the others insulted and argued with petitioner, then they left and came back about 45 minutes later. Petitioner asked McClendon for "2 for 15," which meant two $10 bags of marijuana for $15, and McClendon refused and walked away. Petitioner shot McClendon in the back of the head from close range with a pistol, and McLendon's friend Ronald Salter shot petitioner in the arm. Eyewitness accounts differ on who fired first, but McClendon was unarmed at the time of his death.

At trial, petitioner asserted that he killed McClendon in self-defense, claiming that he was scared of McClendon because he had a history and reputation of violence. A jury convicted petitioner of second-degree murder, possession of a firearm by a felon, two counts of assault with a deadly weapon, and enhancements for six prior convictions. The trial court sentenced petitioner to a term of 54 years-to-life in state prison. The California Court of Appeal affirmed the conviction, and the California Supreme Court summarily denied a petition for review.

**ANALYSIS**

**I.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

2

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). In this case, the last reasoned opinion to address petitioner's claim is that of the California Court of Appeal.

## II. PETITIONER'S CLAIMS

As grounds for federal habeas relief, petitioner has eight remaining claims: 1) the trial court's exclusion of evidence regarding a handgun violated his right to due process, 2) denial of petitioner's motion to dismiss the two assault charges not originally included in the preliminary hearing violated his Fifth Amendment and due process rights, 3) petitioner's constitutional right to a jury of his peers was violated by the absence of African-Americans on the jury, 4) trial counsel's failure to investigate and call certain witnesses violated his Sixth Amendment right to effective assistance of counsel, 5) prosecutor's statement to the newspaper violated his due process rights, 6) appellate counsel's failure to raise the previous five claims on appeal violated petitioner's Sixth Amendment rights, 7) the trial court's exclusion of evidence regarding McClendon's admission to a previous murder violated petitioner's due process rights, and 8) trial counsel's failure to inform petitioner of the consequences of a plea deal violated his Sixth Amendment rights.

### 1. Exclusion of Hand Gun Evidence

Petitioner contends that the trial court's failure to admit evidence regarding the pistol used by Salter during the incident violated his due process rights because it hampered his self-defense claim. Petitioner, during an in limine motion, claimed that the pistol used during the shootout by Salter was used to kill another man three days earlier. Petitioner wanted to use that evidence to show that McClendon and Salter were violent and dangerous. The trial court

3

refused to admit the evidence.

Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth Amendment guarantee of due process, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683 690 (1986)). The constitutional right to present a complete defense includes the right to present evidence. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). But the right is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." *Id.* at 16. Moreover, a violation of the right to present a defense merits habeas relief only if the error was likely to have had a substantial and injurious effect on the verdict. *Lunbery v. Hornbeam*, 605 F.3d 754, 762 (9th Cir. 2010) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

Under California law, a valid claim of self-defense claim to a murder charge requires the defendant to have an honest and reasonable belief that great bodily injury is about to be inflicted upon him. *See People v. Minifie*, 56 Cal. Rptr. 2d 133, 137 (Cal. 1996). A defendant's own state of mind during the incident may be shown to be reasonable in part by the reputation for violence of the victim or his associate group. *Id*.

This claim was not brought before the California Court of Appeal, but it was raised before the California Supreme Court, which summarily rejected the claim. The denial of this claim conforms with existing United States Supreme Court precedent because the gun evidence was not relevant. It was never proven that McClendon or Salter committed the prior murder or used the gun in that murder. In addition, the history of a gun that *Salter* fired in this incident does not bear on the character or past actions of *McClendon*. As such, the evidence about the gun does not show that McClendon has a history of violence. Moreover, even if evidence of the history of the gun that Salter used were relevant to petitioner's claim, any error in excluding the evidence is harmless under the *Brecht* standard. Petitioner had successfully introduced evidence that McClendon was charged with the prior murder, which charges were later dismissed. This was far more powerful evidence of McClendon's violent nature than the

4

history of the gun used by Salter. As the gun evidence was irrelevant and its exclusion did not have a substantial or injurious effect on the verdict, habeas relief is not warranted on this claim.

### 2. Denial of Motion to Dismiss Assault Charges

Petitioner claims the trial court violated his Fifth and Fourteenth Amendment rights by denying a defense motion to dismiss two counts of assault with a deadly weapon because they had not been included in the original indictment. The Fifth Amendment to the Constitution provides that, except for certain military cases, "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The Bill of Rights, including the Fifth Amendment, applies directly only to the federal government. *See Barron v. Baltimore*, 32 U.S. (7 Pet.) 243 (1833). Prosecution by indictment has long been held *not* to be required of the states by the Due Process Clause. *See Hurtado v. California*, 110 U.S. 516, 538 (1884). As the Supreme Court has never incorporated the Fifth Amendment requirement of prosecution by indictment into the Due Process Clause of the Fourteenth Amendment, California was not required to include the two assault charges in the indictment. These charges were later added by information, which is constitutional. The state courts did not violate Supreme Court precedent by denying this claim. Accordingly, habeas relief is not warranted.

### 3. Composition of the Jury

Petitioner claims that he was denied his constitutional right to a trial by an impartial jury under the Fifth, Sixth, and Fourteenth Amendments because his jury included no African-Americans. He complains that while East Oakland is 85-90% black, yet only 12% of the jury pool was black (*id.* at 13).

A criminal defendant has a constitutional right stemming from the Sixth Amendment to a fair and impartial jury pool composed of a cross section of the community. *See Holland v. Illinois*, 493 U.S. 474, 476 (1990). The fair cross section requirement applies only to the larger jury pool or venire and is not applicable to petit juries. *See Lockhart v. McCree*, 476 U.S. 162, 173-74 (1986). In *Duren v. Missouri*, 439 U.S. 357, 364 (1979), the Supreme Court held that to establish a *prima facie* violation of the fair cross section requirement, a defendant must show

5

that "(1) the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process."

The first showing easily is made in most cases, while the second and third are more likely to generate controversy. *Berghuis v. Smith*, 130 S. Ct. 1382, 1393 (2010). The second *Duren* requirement is that the group not be fairly represented in the venire from which the petit jury was chosen. "The second prong . . . requires proof, typically statistical data, that the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community." *Esquivel*, 88 F.3d at 726. The third *Duren* requirement is that the underrepresentation result from a systematic exclusion of the group in the jury selection process. Under the third prong, the disproportionate exclusion need not be intentional to be unconstitutional, but it must be systematic. *See Randolph v. California*, 380 F.3d 1133, 1141 (9th Cir. 2004).

In rejecting petitioner's claim, the California Supreme Court did not violate existing Supreme Court precedent. While African Americans are undoubtably a distinctive group, petitioner does not explain any systematic exclusion of African Americans from the jury pool or the petit jury. He does not cite any action by the prosecution, such as peremptory challenges, or by the state in selecting the jury pool that led to the absence of African Americans on his jury. Furthermore, petitioner's claim that African-Americans were under-represented in the jury pool lacks proof. His assertion that East Oakland is "85-90% black" is unsubstantiated by any evidence in the record, nor does petitioner account for the percentage of those citizens unqualified to serve as jurors or the no-show rate. As petitioner's claim fails on *Duren*'s second and third prongs, he is not entitled to habeas relief.

**4.     Ineffective Assistance of Counsel in Investigating Witnesses**

Petitioner claims trial counsel provided him with ineffective assistance because of his failure to investigate and call witnesses, in violation of his Sixth Amendment rights. Petitioner asserts that before trial he asked his lawyer to seek out and interview two witnesses to the

6

1  shooting, Anthony Brown and Clinton Dykes. Petitioner found the two using alternate means
2  and acquired a sworn affidavit from Mr. Dykes but not from Mr. Brown.

3  A claim of ineffective assistance of counsel requires a showing both that counsel's
4  performance was deficient and that the deficiency resulted in prejudice to the defendant. *Hurles*
5  *v. Ryan*, 706 F.3d 1021, 1030 (9th Cir.2013) (citing *Strickland v. Washington*, 466 U.S. 668,
6  687 (1984)). Establishing deficient performance "requires a showing that trial counsel's
7  representation fell below an objective standard of reasonableness as measured by prevailing
8  professional norms." *Id*. Establishing prejudice requires a showing of "a reasonable probability
9  that 'but for counsel's unprofessional errors, the result of the proceeding would have been
10  different.'" *Hurles*, 706 F.3d at 1031 (quoting *Strickland*, 466 U.S. at 694).

11  Petitioner fails to show how counsel's failure to investigate the two witnesses resulted in
12  prejudice to him. Petitioner admits that he has been unable to locate Anthony Brown.
13  Therefore, it is unknown whether he would have given favorable testimony, what the nature of
14  that testimony would have been, or whether he would have been able to testify at all. Clinton
15  Dykes's affidavit contains no new evidence supporting petitioner's claim of self defense. Mr.
16  Dykes states that petitioner talked to McClendon, that "something was going down," and that
17  McClendon then fell to the ground while petitioner stood over him yelling (Pet. Exh. A). There
18  was an exchange of gunfire, and then Mr. Dykes fled (*ibid.*). This account does not
19  substantially differ from the testimony by other witnesses, and it does not favor petitioner's self-
20  defense theory. As a result, petitioner has not shown a reasonable likelihood that counsel's
21  investigation of these two witnesses would have made a difference in the verdict. The
22  California Supreme Court's denial of this claim comports with Supreme Court precedent, and
23  habeas relief is not warranted on this claim.

24  **5.      Prosecutor's Statement to the Newspaper**

25  Petitioner claims the prosecutor committed misconduct by commenting to a newspaper
26  on the day before giving closing arguments that: "Common sense and the facts make clear that
27  this was a premeditated murder . . . . Mr. Cross executed an unarmed man because of bravado
28  and wounded pride" (Pet. Exh. B). Petitioner moved for a mistrial. The prosecutor defended

7

himself by saying he tried to get the newspaper to delay publishing the article, and after confirming this fact, the trial court denied the motion, citing its admonishments to the jury to avoid reading newspaper articles (Ans. 14).

Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Ibid.*; *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The first factor in determining misconduct amounted to a violation of due process is whether the trial court issued a curative instruction. When a curative instruction is issued, a court presumes that the jury has disregarded inadmissible evidence and that no due process violation occurred. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987). Courts also look at the weight of the evidence of guilt. *See*, *e.g.*, *United States v. Young*, 470 U.S. 1, 19 (1985) (misconduct did not require new trial where "overwhelming" evidence of guilt); *United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987) (misconduct required new trial in light of prior hung jury and lack of curative instruction).

The prosecutor should not have made comments to the newspaper about the case during the trial. Nevertheless, in this case such comments did not render the trial fundamentally unfair thanks to the jury instructions, the presumption that the jury followed such instructions, the nature of the prosecutor's comments, and the very strong evidence of guilt. The jury was instructed not to investigate the facts or consult reference works, and they are presumed to have followed their instructions by not reading about the case in the newspaper. In addition, the statements the prosecutor made to the newspaper were nearly identical to his closing arguments. As a result, the jury would not have learned anything new from the comments. Finally, there was strong evidence of petitioner's guilt at trial: it was not disputed that petitioner shot an unarmed McClendon in the back of the head, and there was little credible evidence that McClendon posed a reasonable threat of inflicting great bodily injury on petitioner at the time of the shooting. The California Supreme Court did not violate Supreme Court precedent by denying the claim that the prosecutor's comments rendered the trial fundamentally unfair.

Accordingly, habeas relief will not be granted on this claim.

### 6. Appellate Counsel's Failure to Raise Above Claims

Petitioner contends his appellate counsel rendered ineffective assistance by not raising the above five claims on direct appeal. Petitioner claims he tried to contact counsel several times to tell him that the claims were worthy of being raised on appeal (Trav. 19). Counsel's ineffective performance only violates due process when there is "a reasonable probability that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hurles*, 706 F.3d at 1031 (quoting *Strickland*, 466 U.S. at 694). As the five claims mentioned have been found to be non-meritorious above, there can be no showing of prejudice regarding counsel's failure to raise them on direct appeal. Accordingly, habeas relief is not warranted on this claim.

### 7. Limitation of Evidence Relating to Murder Charge Against McClendon

Petitioner claims that his due process rights were violated when the trial court excluded evidence regarding McClendon's alleged admission to petitioner that he committed a murder in the past, and prevented the cross-examination of Salter about an alleged "false" alibi. Petitioner sought to admit evidence that McClendon admitted and "bragged" that he committed a murder in 1997, and that the gun he used in that murder was linked to the homicide that occurred three days before petitioner killed McClendon. The trial court denied this request, and also sustained an objection when defense counsel asked petitioner what McClendon had said to him regarding the murder charge. However, the trial court did allow evidence that McClendon was charged with the murder that occurred three days earlier and that those charges were later dismissed. Petitioner also tried to cross-examine Slater that an alibi he provided for McClendon regarding the 1997 murder charge was false. The trial court also denied cross-examination of Salter about this "false" alibi because it was irrelevant and confusing.

"State and federal rule makers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotations and citations omitted). This latitude is limited, however, by a defendant's

9

constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. *Ibid.* "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 325-26. Even if an evidentiary error is of constitutional dimension, the court must consider whether the error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

This claim was rejected by a reasoned opinion of the California Court of Appeal. That court found that the limitations on the evidence and cross-examination "did not prevent the [petitioner] from presenting evidence of the factual basis for his actual and reasonable fear of McClendon, including other testimony concerning defendant's knowledge of McClendon's reputation or character for violence" (Exh. F at 6-8). The appellate court reasoned that because petitioner was able to introduce evidence of his knowledge of McClendon's murder charge, additional evidence of McClendon "bragging" about it to petitioner was cumulative (*ibid.*). Such evidence may have also mislead and confused the jury into believing that it needed to decide whether McClendon actually committed the prior murder (*ibid.*). Allowing cross-examination of Salter regarding a false alibi he provided for a murder charged to McClendon could similarly mislead the jury and confused them into thinking that they needed to decide whether McClendon had committed a prior murder (*ibid.*). In addition, other evidence was allowed to undermine Salter's credibility, namely his friendship with McClendon and his multiple prior convictions (*ibid.*).

The state appellate court's reasoning is a sound interpretation of federal law. The evidence of McClendon's "bragging" was both cumulative of other evidence of petitioner's knowledge of McClendon's violent past, and its probative value was outweighed by its potential for misleading and confusing the jury. Likewise, the value of cross-examining Salter was outweighed by its potential for confusing the issues for the jury to decide. Moreover, petitioner was able to impeach him with other evidence. Accordingly, habeas relief will not be granted on

this claim.

### 8. Counsel's Assistance Regarding Plea Bargain

Petitioner claims his trial counsel failed to inform him of the consequences of accepting or rejecting an alleged plea bargain. Petitioner claims that trial counsel came to him in the "bull-pen" on the day the defense was to begin its arguments with a "'one time offer from the judge" for 21 years (Supp. Pet. 3). Counsel allegedly told petitioner he had less than two hours to decide whether to accept or reject the offer (*id*. at 8). Petitioner complains that counsel did not ask the court for more time to consider the plea, and that he advised petitioner to reject the offer because it indicated that the judge thought the prosecution's case was weak (*ibid.*).

Although respondent raises issues of timeliness and retroactivity, this claim can be denied on its merits. A claim of ineffective assistance of counsel requires a showing both that counsel's performance was deficient and that the deficiency resulted in prejudice to the defendant. *Strickland*, 466 U.S. at 687. To begin with, petitioner's claim that the offer was made is not corroborated by any evidence in the record. Uncorroborated self-serving statements by petitioners such as these are often insufficient to overcome the presumption of validity accorded to state convictions. *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002). In any event, even if the offer was made, petitioner has not shown that counsel's advice to reject the offer violated the Sixth Amendment. Trial counsel merely made a judgment call comparing a lengthy plea offer of twenty-one years with the potential for acquittal. Petitioner has not shown that counsel's judgment that risking a longer sentence at trial was unreasonable, or that it was against petitioner's expressed wishes. Petitioner's complaint that counsel should have asked the court for more time to consider the offer also does not establish grounds for relief because he does not explain what benefit more time would have yielded, there is no indication that counsel's advice would have changed, and there is no reason to think that such a request would have been granted where defense counsel was about to make their arguments to the jury. As petitioner has not shown that counsel's conduct surrounding the alleged plea offer violated his Sixth Amendment rights, he is not entitled to habeas relief on this claim.

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: October 24, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE